IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**ROBERT WARREN TRIPLETT, JR.,**                                            **PLAINTIFF**
**# 126566**

**v.**                                                         **CAUSE NO. 1:17CV65-LG-RHW**

**JACQUELINE BANKS, MARSHALL
TURNER, FAYTONIA JOHNSON,
LAURA TILLEY, GIA MCLEOD,
JOSEPH COOLEY, RONALD
WOODALL, NURSE HARDY, JOY
ROSS, CAPTAIN R. EVANS,
CAPTAIN S. EVANS, CAPTAIN
COOLEY, CAPTAIN DAVIS,
LIEUTENANT CAUSEY,
LIEUTENANT TAYLOR, VALLEY
FOODS, ARAMARK, JOHN DOES,
CGL, A HUNT COMPANY, DR. C.
MCCLEAVE, and NURSE
PRACTITIONER G. WOODLAND**                         **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER OF PARTIAL DISMISSAL

This case is before the Court *sua sponte*. *Pro se* Plaintiff Robert Warren Triplett, Jr., is incarcerated with the Mississippi Department of Corrections ("MDOC"), and he challenges the conditions of his confinement. The Court has considered and liberally construed the pleadings. As set forth below, Defendants Laura Tilley, Gia McLeod, Joseph Cooley, Valley Foods, Aramark, and CGL, a Hunt Company, are dismissed.

### FACTS AND PROCEDURAL HISTORY

Triplett is housed at the South Mississippi Correctional Institution

("SMCI"). The twenty Defendants are all either employed or contracted by MDOC. Defendant Jacqueline Banks is the Superintendent of SMCI, and Defendant Marshall Turner is the Warden. Defendants Faytonia Johnson, Joy Ross, Captain R. Evans, Captain S. Evans, Captain Cooley, Captain Davis, Lieutenant Causey, and Lieutenant Taylor are all correctional officers there. Defendant Laura Tilley works in the prison's law library, and Defendant Gia McLeod is the director of MDOC's Inmate Legal Assistance Program. Defendant Joseph Cooley works for the prison's Administrative Remedy Program ("ARP"). Defendants Ronald Woodall and Dr. C. McCleave are doctors at SMCI, and Defendants Nurse Hardy and Nurse Practitioner G. Woodland work as nurses there. Defendants Valley Foods and Aramark are, respectively, the former and current food vendors for MDOC. Finally, Defendant CGL, a Hunt Company, is alleged to be the maintenance contractor for SMCI.

Triplett's complaints include lighting, sanitation, and handicap accessibility issues in his housing zone. He also attempts to assert claims concerning the handling of his inmate bank account, the handling of his grievances, medical care; and the amount of food he is being served.

As for the conditions on Triplett's housing zone, he first alleges that the lighting is so insufficient that it causes difficulty in seeing and doing his legal work and makes him depressed. Triplett accuses Banks and Warden Turner of being deliberately indifferent to the lighting issue.

Triplett next claims that, since October of 2015, there have been frequent sewage leaks from two of the toilets, coupled with the fact that the drain in the floor is allegedly stopped up. This, he contends causes the sewage to puddle on the floor and be tracked all over the zone. He allegedly reported the issue to Banks, Warden Turner, and Johnson. The issue was turned over to the maintenance contractor, and CGL allegedly attempted repairs to the wax seals under the toilets. The repairs, Triplett contends, have not fixed the issue, which "should have been readily apparent to" Banks, Turner, and Johnson. (Compl. at 14). Triplett claims that Johnson allowed him to write the local CGL supervisor to give a repair procedure that Triplett believes will address the problem, but after the supervisor received it, "nothing has been done." *Id.*

Relatedly, Triplett alleges that there is only one handicap accessible toilet on the zone, which houses 100 inmates. He admits there is no one on the zone who needs a wheelchair; however, he contends that he needs the handicap accessible toilet when his knees become "especially troublesome." *Id.* at 13. Triplett accuses Banks and Johnson of being deliberately indifferent to this situation.

Besides the issues on Triplett's particular housing zone, he also complains about the manner in which his inmate bank account is being handled. Specifically, he accuses Tilley and McLeod of overcharging him for legal postage, which overcharge is "not in accordance with . . . MDOC . . . policies . . . and then failing to address these instances when and [sic] Administrative Remedy Procedure was

3

submitted." (Resp. at 1). Triplett also complains that Dr. Woodall charged him for chronic care eye appointments, allegedly in contravention of MDOC policy. Triplett further takes issue with the fact that Dr. Woodall handled both the First and Second Steps of the ARP that challenged these medical charges. Triplett claims that there are probably more charges he could dispute but for missing inmate account statements.

As with Tilley, McLeod, and Woodall, Triplett faults Joseph Cooley for the way Triplett's ARP grievances were handled. Cooley is accused of losing some of the grievances, failing to both process the grievances and forward the responses "in an expedient manner," backlogging Triplett's grievances, and sending the grievance to the same person to hear the First and Second Steps. *Id.* at 1-2.

Next, Triplett complains about his medical care for his sinuses and a skin condition. He alleges that Nurse Hardy denied him treatment for a sinus condition and that this failure was caused by Dr. Woodall's failure to train the nurses that they, too, were allowed to provide symptomatic relief, pending an inmate's appointment with a doctor. Triplett additionally accuses Dr. Woodall, Dr. McCleave, and Nurse Woodland of not giving him nose spray to relieve his congested nose and ears. Triplett also faults Dr. McCleave and Nurse Woodland for allegedly denying him antibiotics for this. As for Triplett's dermatological concerns, he contends that a dermatologist has prescribed him medicated shampoo, and Dr. Woodall "routinely reduces the number of refills" on this shampoo. *Id.* at

4

6.

Finally, Triplett alleges that he is being denied food through missing items and inadequate portions of the items that are served. As a result, he claims to have lost weight. He maintains that the problem stems from inmate kitchen workers who are stealing food from the kitchen and placing unreasonably small amounts of food on the inmate trays. Allegedly, Banks, Warden Turner, Ross, Captain R. Evans, Captain S. Evans, Captain Cooley, Captain Davis, Lieutenant Causey, and Lieutenant Taylor are all aware of the problem but are deliberately indifferent to it. Triplett believes the missing items and inadequate portions are also the fault of Aramark and the personnel of Valley Foods and Aramark.

Triplett brings this action, pursuant to 42 U.S.C. § 1983, asserting claims for cruel and unusual punishment, denial of handicap accessibility, and violations of due process. He seeks injunctive relief and compensatory and punitive damages.

## DISCUSSION

The Prison Litigation Reform Act of 1996, applies to prisoners proceeding *in forma pauperis* in this Court. The statute provides in pertinent part that, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The statute "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but

5

also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). "[I]n an action proceeding under [28 U.S.C. § 1915, a federal court] may consider, sua sponte, affirmative defenses that are apparent from the record even where they have not been addressed or raised." *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990). "Significantly, the court is authorized to test the proceeding for frivolousness or maliciousness even before service of process or before the filing of the answer." *Id.* The Court has permitted Triplett to proceed *in forma pauperis* in this action. His Complaint is subject to *sua sponte* dismissal under § 1915.

Among others, Triplett sues Tilley, McLeod, Joseph Cooley, Valley Foods, Aramark, and CGL. Triplett accuses the first three of violations of due process, and he claims cruel and unusual punishment against the latter three.

<u>TILLEY AND MCLEOD</u>

First, the law librarians, Tilley and McLeod are accused of violating MDOC policy by overcharging Plaintiff for legal postage and then not addressing this issue when he filed a grievance. This, Plaintiff contends, violates his right to due process.

An intentional deprivation of property may be a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). However:

> an unauthorized intentional deprivation of property by a state
> employee does not constitute a violation of the procedural

6

> requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional . . . deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

*Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Mississippi provides an adequate postdeprivation remedy for the loss of property through other means, because Triplett may sue for conversion and for taking property without just compensation under the Mississippi Constitution. *Nickens v. Melton*, 38 F.3d 183, 185 (5th Cir. 1994) (conversion); *Johnson v. King*, 85 So. 3d 307, 310-11 (¶¶7-8) (Miss. Ct. App. 2012) (Mississippi Takings Clause). For this reason, the claims against the law librarians for deprivation of property without due process are dismissed as frivolous.

JOSEPH COOLEY

Second, Triplett asserts a due process claim against Joseph Cooley for allegedly mishandling his prison grievances.

Triplett "does not have a federally protected interest in having these grievances resolved to his satisfaction." *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Even the failure to investigate a grievance, by itself, does not rise to the level of a constitutional violation. *Id.*; *Andrews v. Fowler*, 98 F.3d 1069, 1079 (8th Cir. 1996); *Smallwood v. McDonald*, 805 F.2d 1036, 1036 (6th Cir. 1986); *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985). The claim against Cooley will therefore be dismissed as frivolous.

7

VALLEY FOODS AND ARAMARK

Next, Triplett sues the food contractors, Valley Foods and Aramark, for a denial of food. He claims that their dieticians develop the menu based upon the required caloric guidelines and the menu is approved by MDOC. He accuses unnamed Valley Foods and Aramark employees of then making substitutions that reduce the caloric makeup of the meals. He also "suspect[s]" that the missing food was either stolen by inmates or never provided to the prison. (Resp. at 5). He seeks to hold the contractors liable on this Eighth Amendment claim, under a theory of vicarious liability. *Id.* at 6.

"There is no vicarious or *respondeat superior* liability of supervisors under section 1983." *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006). The supervisor must either be personally involved in the violation or otherwise have caused the violation. *Id.* Triplett merely accuses these Defendants' employees of being involved in the alleged food shortage. This is insufficient to state a claim against Valley Foods and Aramark.

Nevertheless, Triplett also speculates that Aramark is personally involved because the menus have been changed recently to reduce the serving size of margarine and sausage gravy that is served to the inmates. As for the gravy, because the amount of gravy was handwritten on an otherwise typed menu, this "leads [Plaintiff] to believe that it was originally 6 oz[.], as on the 2016 menus. However, the production menus, which [he] is inclined to believe are created by

8

Aramark management offsite, all show 4 oz." (Supp. Resp. at 2). He "believe[s] that all this supports [his] contention . . . that parts of [the alleged] food shortage are indeed due to corporate decisions, likely onsite in some instances and offsite in others." *Id.* at 3.

Plaintiff's inclinations and suspicions notwithstanding, this does not suffice to demonstrate Aramark's personal involvement. The claims against the food contractors will therefore be dismissed as frivolous and for failure to state a claim.

CGL

Finally, Triplett sues CGL, the maintenance contractor, for the alleged repeated sewage leaks on his zone. He claims that the local "supervisor of the inmate crew" did not implement Triplett's proposed repairs and that the repairs completed so far have not worked. (Compl. at 14).

Like the food contractors, CGL is sued under § 1983 only because it is an employer. Triplett does not allege the involvement of anyone other than the local supervisor. The Complaint fails to state a claim against CGL upon which relief may be granted.

**IT IS THEREFORE ORDERED AND ADJUDGED** that, for the reasons stated above, the claims against Defendants Laura Tilley, Gia McLeod, and Joseph Cooley are **DISMISSED WITH PREJUDICE** as frivolous.

**IT IS FURTHER ORDERED AND ADJUDGED** that the claims against Defendants Valley Foods, Aramark, and CGL, a Hunt Company, are **DISMISSED**

9

**WITH PREJUDICE** as frivolous and for failure to state a claim against them upon which relief could be granted. The remainder of the case shall proceed on the lighting, sanitation, accessibility, medical charges and treatment, and food shortage claims.

**SO ORDERED AND ADJUDGED** this the 2nd day of August, 2017.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE