UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

ROBERT WARREN TRIPLETT                                    PLAINTIFF

VERSUS                                    CIVIL ACTION NO. 1:17CV65-RHW

JACQUELINE BANKS et al                                    DEFENDANTS

## ORDER GRANTING [109] MOTION FOR SUMMARY JUDGMENT

Plaintiff Robert Warren Triplett, proceeding *pro se* and *in forma pauperis*, filed a 42

U.S.C. § 1983 prisoner civil rights complaint alleging unconstitutional conditions of confinement

at the South Mississippi Correctional Institution (SMCI), including an allegation of deliberate

indifference to his medical needs. Plaintiff complains about inadequate medical care for: (1) a

sinus infection and related vertigo; and (2) a facial lesion that he fears might be skin cancer.

Plaintiff also alleges unauthorized medical charges stemming from medical treatment at SMCI.

Defendants Dr. Ronald Woodall, Dr. Charmaine McCleave, Nurse Kera Hardy, and Nurse

Practitioner Gwendolyn Woodland (Medical Defendants) filed a motion for summary judgment

as to Plaintiff's medical claims. Doc. [109]. Plaintiff filed a response on January 14, 2019.

Doc. [123]. Plaintiff previously had filed on November 19, 2018, a motion requesting an

extension of time to respond to the Medical Defendants motion for summary judgment. Doc.

[115]. The Court grants Plaintiff's motion for extension to the extent that the Court deems

Plaintiff's response of January 14, 2019, to be timely.

## Law and Analysis

### Summary Judgment Standard

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). Where the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, all other contested issues of fact are rendered immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Topalin v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of a material fact and the appropriateness of judgment as a matter of law to prevail on its motion. *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131. "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John v. State of Louisiana*, 757 F.3d 698, 708 (5th Cir. 1985). Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).

**Inadequate Medical Care**

Plaintiff alleges that he did not receive constitutionally adequate medical care for his sinus infection and facial lesion. To state a constitutional claim for denial of adequate medical care, a plaintiff must demonstrate that defendants were deliberately indifferent to plaintiff's serious medical needs, such that it constituted an unnecessary and wanton infliction of pain.

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prison official is not liable for the denial of

medical treatment unless the official knows of and disregards an excessive risk to inmate health

or safety. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). The Constitution guarantee

prisoners "only adequate, not optimal medical care." *Spriggins v. LaRavia*, 2012 WL 1135845,

at *4 (E.D. La. Apr. 4, 2012) (emphasis in original), citing *Gobert v. Caldwell*, 463 F.3d 339,

349 (5th Cir. 2006). An allegation of malpractice or mere negligence is insufficient to state a

claim. *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999). Moreover, the fact that a prisoner

disagrees with the type of medical treatment does not constitute a constitutional deprivation.

*Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). A delay in medical care may, under

certain circumstances, state a claim for constitutionally inadequate medical care. *See Mendoza v.

Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). A "delay in medical care can only constitute an

Eighth Amendment violation if there has been deliberate indifference, which results in

substantial harm." *Id.* at 195. However, "the decision whether to provide additional treatment 'is

a classic example of a matter for medical judgment.'" *Domino v. Texas Dep't of Crim. Justice*,

239 F.3d 752, 756 (5th Cir. 2001). Disagreements about whether an inmate should be referred to

a specialist as part of ongoing treatment do not constitute deliberate indifference. *See Alfred v.

Texas Dep't of Criminal Justice*, No. 03-40313, 2003 WL 22682118, at *1 (5th Cir. Nov.13,

2003); *Hickman v. Moya*, No. 98-50841, 1999 WL 346987, at *1 (5th Cir. May 21, 1999).

### Sinus Condition

With respect to treatment of Plaintiff's sinus condition and vertigo, Plaintiff alleges that

for approximately one month, between December 10, 2015 and January 16, 2016, he received

little or no treatment. Doc. [1] at 70. Plaintiff's primary complaint is that he feels he should

have been prescribed an antibiotic. Plaintiff testified at the screening hearing that the medical

defendants refused to give him antibiotics on several occasions. Doc. [86] at 33. He later asserted that "any reasonable doctor or nurse practitioner should prescribe" antibiotics for a sinus condition. *Id.* at 37. In his response to summary judgment, Plaintiff asserts that it should be obvious to any layman that sinus infections should be treated with antibiotics. Doc. [123] at 2. Plaintiff admitted that on at least one occasion Nurse Woodall prescribed antibiotics, and he stated that Dr. Woodall "normally will prescribe them." Doc. [86] at 19. As demonstrated by the medical records and Plaintiff's assertions, he merely disagrees with the type and course of treatment he received, which does not rise to level of a constitutional violation.

The medical records repeatedly demonstrate that in fact Plaintiff did receive ongoing medical treatment for his sinus condition. *See* Doc. [112]. Such treatment included examinations by medical providers and provision of medications such as Tylenol, Claritin, cold packs, and eventually an antibiotic. Plaintiff submitted his first sick call request related to the allegations in this complaint in mid-December 2015. He was seen by medical staff on December 13, 2015. Doc. [112] at 1-2. At that time, Plaintiff had a prescription for Tylenol, which was not set to expire until December 30, 2015. *Id.* at 2. Defendant Nurse Woodland examined Plaintiff on December 17, 2015. *Id.* at 4-5. He was referred to Defendant Dr. McCleave and examined by her that same day. *Id.* at 5-6. Dr. McCleave prescribed Claritin to Plaintiff and gave him a shot of Toradol for his complaints of neck pain. Doc. [123-1] at 9-10. Plaintiff was examined on December 28, 2015, by Defendant Nurse Hardy, who referred Plaintiff to a medical provider. Doc. [112] at 6. Nurse Hardy performed another examination on January 7, 2016 and referred Plaintiff to a medical provider. *Id.* at 9. According to Plaintiff, Nurse Hardy offered him decongestants during each of these visits, which Plaintiff refused because he wanted to be examined by a doctor instead. Doc. [86] at 37; Doc. [123] at 2-3. On January 16, 2016, Dr.

Woodall examined Plaintiff for complaints of sinus congestion. Doc. [112] at 11-13. Dr. Woodall prescribed an anti-inflammatory, an antibiotic and a cold pack for Plaintiff's symptoms. *Id.*

During the screening hearing, Plaintiff admitted to seeing medical providers on several occasions. *See* Doc. [86] 16-21. He even stated that Defendants McCleave and Woodland "are pretty good about doing an examination". *Id.* at 33. He also admitted to receiving antibiotics on one occasion, receiving cold packs from Dr. Woodland, receiving two prescriptions for Antivert to treat vertigo, and being offered by Nurse Hardy cold packs, antihistamines, and a decongestant. *Id.* at 17, 19, 34-35, 37. In his response to summary judgment, Plaintiff recites with considerable detail the numerous visits, interactions, and treatments he received from medical personnel. *See* Doc. [123] at 1-5. Although he expresses disagreement with the course of treatment and treatment options, his pleading offers additional support for the conclusion that Defendants were not deliberately indifferent to his medical condition from December 2015 to January 2016. Based on the foregoing, there is no genuine issue of material fact regarding whether Defendants were deliberately indifferent to Plaintiff's sinus condition during the relevant time frame.

Plaintiff also points to slight delays in being examined by a medical provider at SMCI or in receiving prescribed medications. None of these delays rise to the level of deliberate indifference. *See Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). As reported in the medical records, Plaintiff was seen by medical providers on at least six occasions between December 12, 2015, and January 16, 2016, and he received various medications as treatment.

**Facial Lesion**

Plaintiff also alleges that Defendants were deliberately indifferent to a facial lesion that he feared might be skin cancer. Plaintiff's claim fails both on the merits and because he did not exhaust administrative remedies prior to filing the instant lawsuit.

Exhaustion of administrative remedies through the prison grievance system is a jurisdictional prerequisite for lawsuits filed pursuant to 42 U.S.C. § 1983. *Wright v. Hollingsworth*, 260 F.3d 357 (5th Cir. 2001). No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies are exhausted. 42 U.S.C. § 1997e(a). The Fifth Circuit takes a "strict approach" to the exhaustion requirement. *See Johnson v. Ford*, 261 Fed. Appx. 752, 755 (5th Cir. 2008). Exhaustion is mandatory for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 630 (5th Cir. 2003). Dismissal is appropriate where an inmate has failed to properly exhaust the administrative grievance procedure before filing his complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal". *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). Merely initiating the grievance process or putting prison officials on notice of a complaint is insufficient to meet the exhaustion requirement. The grievance process must be carried through to its conclusion before suit can be filed under the Prison Litigation Reform Act. *Wright*, 260 F.3d at 358. "Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at

6

the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury. *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

As demonstrated by Plaintiff's ARP file, provided in conjunction with Defendants' motion for summary judgment, Plaintiff did not file an ARP regarding medical treatment for the facial lesion. *See* Doc. [109-3]. In his response to the motion for summary judgment, Plaintiff does not dispute Defendants' assertion that he failed to exhaust with respect to this claim. Moreover, in his complaint, Plaintiff simply expressed worry that the facial lesion might be cancerous. In response to his concerns, Defendants referred Plaintiff to a dermatologist (Dr. Conerly) in Hattiesburg for an appointment about three months later. Doc. [86] at 20, 35-36. According to Plaintiff, Dr. Conerly did not believe that the lesion was melanoma and treated it with liquid nitrogen. Plaintiff indicates that he is due for a follow-up examination with Dr. Conerly. Based on the foregoing, Plaintiff has failed to demonstrate deliberate indifference to his facial lesion.

**Unauthorized Medical Charges**

Plaintiff alleges that he received several unauthorized medical charges to his inmate account. As an initial matter, Plaintiff failed to exhaust administrative remedies as to this claim prior to filing his lawsuit. Plaintiff filed his complaint on March 10, 2017. Plaintiff did not receive a second step response to the ARPs until March 2018, approximately one year after filing his original complaint. Thus, he could not have exhausted administrative remedies prior to initiating this lawsuit. *See Wendell v. Asher*, 162 F.3d 887, 892 (5th Cir. 1998) (holding that "administrative remedies be exhausted *before* the filing of a § 1983 suit, rather than while the action is pending."); *Evans v. Grubbs*, 2011 WL 2565298, at *2 (S.D.Miss. June 28, 2011). In his response, Plaintiff admits that he did not exhaust with respect to the medical charges claim

until a point in time after he filed the original complaint. *See* Doc. [123] at 6. Regardless, Plaintiff's claim for unauthorized medical charges does not state a viable claim under § 1983.

A claim for unauthorized deprivation of an inmate's property, such as Plaintiff alleges in this case, does not result in a violation of the inmate's constitutional rights if there is an adequate post-deprivation remedy available. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5ᵗʰ Cir. 1996). The Due Process Clause is not implicated by a state official's negligent act causing unintended loss of property. *Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988). Likewise, intentional deprivations of property by state employees do not implicate the due process clause as long as there is an adequate state post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Murphy v. Collins*, 38 F.3d 541, 543-44 (5th Cir. 1994). The State of Mississippi provides an adequate post-deprivation remedy--namely, filing a lawsuit for conversion in state court. *Nickens v. Melton*, 38 F.3d 183 (5th Cir. 1994). Hence, Plaintiff's claim for deprivation of personal property, whether by negligence or intentional act, does not rise to the level of a constitutional claim.

**Plaintiff's Motion to Dismiss**

On November 19, 2018, Plaintiff filed a motion to dismiss the Medical Defendants' motion for summary judgment. Doc. [114]. Plaintiff argues that he did not receive any of the documents requested in discovery except those provided at the February 28, 2018, screening hearing. The Court notes that Plaintiff received at the screening hearing 513 pages of documents, including his institutional record, medical records, and ARP documentation. Doc. [86] at 30. Plaintiff also argues that he has not received a complete copy of the screening hearing transcript.

The mere fact that Plaintiff did not receive all discovery to which he feels he is entitled is not a valid basis for dismissing Defendants' motion for summary judgment. He does not identify a single discovery request or specific document that would aid him in responding to Defendants' motions for summary judgment. Instead, Plaintiff merely relies on the general absence of discovery responses as grounds for dismissing Defendants' motion. Plaintiff did not serve discovery requests until September 27, 2018, less than 30 days from the October 22, 2018 discovery deadline. Plaintiff later filed an untimely motion to compel discovery on November 28, 2018, which this Court has denied. *See* Doc. [116] [137]. Although Rule 56(d) allows the Court to defer consideration of or deny a motion for summary judgment, Plaintiff's general request for untimely discovery is not sufficient reason to dismiss or defer ruling on Defendants' motion for summary judgment. Likewise, Plaintiff fails to explain how a copy of the screening hearing transcript is necessary to respond to Defendants' motion for summary judgment. Plaintiff was present at and participated in the screening hearing. Defendants provided excerpts for those portions of the hearing transcript they relied upon, but they are under no obligation to provide Plaintiff with an entire copy of the hearing transcript at their expense. Plaintiff has failed to demonstrate a particularized need for a free copy of the transcript. *See* 28 U.S.C. § 1915(c); *Norton*, 122 F.3d at 293. Based on the foregoing, Plaintiff's motion to dismiss is denied.

**Motions for Temporary Restraining Orders**

Throughout this litigation, Plaintiff has filed motions for temporary restraining order (TRO) relating to his claims. For the most part, these motions have amounted to nothing more than an update on what he deems to be ongoing violations of the constitutional claims asserted in his complaint. By order dated April 26, 2018, the Court denied nine such motions, some of

9

which related to Plaintiff's medical care at SMCI. *See* Doc. [72]. He has filed six additional

TRO motions relating to ongoing medical treatment at SMCI. Doc. [129] [130] [131] [133]

[134] [135]. Plaintiff's original complaint alleged inadequate treatment from approximately

December 10, 2015, to January 16, 2016. Plaintiff's allegations in the TRO motions discuss

medical treatment that occurred two to three years after the constitutional violations alleged in

his original complaint. As such, these allegations are beyond the temporal scope of this lawsuit.

In the latest TRO motions, he reports numerous medical visits. He admitted receiving Nasacort

for his sinus condition, albeit with some interruptions. He also admitted receiving ibuprofen for

pain; however, in his estimation, he did not receive enough. Plaintiff also admitted to receiving a

hernia belt, a referral for hernia surgery, a shampoo prescription for psoriasis, and an antifungal

cream. Primarily, he complains about delays and the nature of the medical care rather than

deliberate indifference.

In the TRO motions at issue, Plaintiff alleges inadequate medical care regarding

treatment for a hernia, psoriasis, arthritic pain, and fungus condition. None of these medical

conditions is alleged in his original complaint. Nor did Plaintiff mention any of these alleged

conditions at his screening hearing. The only claims of inadequate medical care discussed by

Plaintiff at the screening hearing related to his sinus condition and related vertigo, and a skin

lesion he feared might be cancer. Doc. [86] at 16-21, 26-27, 33-37. Plaintiff's TRO motions are

an attempt to inject into this lawsuit every disagreement he has regarding ongoing medical

treatment at SMCI, regardless of whether it relates to the medical conditions alleged in the

original complaint. The Court finds that Plaintiff's TRO motions should be denied. If Plaintiff

wishes to pursue claims regarding inadequate medical treatment for the post-lawsuit allegations

10

addressed in his TRO motions, then he must first exhaust administrative remedies and then file a new complaint.

IT IS THEREFORE ORDERED AND ADJUDGED that Defendants' [109] Motion for Summary Judgment is GRANTED, and that Plaintiff's lawsuit is dismissed with prejudice as to Defendants Ronald Woodall, Charmine McCleave, Kera Hardy, and Gwendolyn Woodland.

IT IS FURTHER ORDERED that Plaintiff's [115] Motion for Extension is GRANTED to the extent that his [123] response filed on November 19, 2018 is deemed as timely filed.

IT IS FURTHER ORDERED that Plaintiff's [114] Motion to Dismiss is DENIED.

IT IS FURTHER ORDERED that Plaintiff's [129] [130] [131] [133] [134] [135] Motions for TRO are DENIED.

SO ORDERED AND ADJUDGED, this the 13th day of May 2019.


/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE