UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

ROBERT WARREN TRIPLETT                                            PLAINTIFF

VERSUS                                              CIVIL ACTION NO. 1:17CV65-RHW

JACQUELINE BANKS et al                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Warren Triplett, proceeding *pro se* and *in forma pauperis*, filed a 42 U.S.C. § 1983 prisoner civil rights complaint alleging unconstitutional conditions of confinement at the South Mississippi Correctional Institution (SMCI). Doc. [1]. The Court permitted him to proceed on claims of inadequate lighting, unsanitary conditions, accessibility, improper medical charges, inadequate medical care, and inadequate food. Doc. [11]. Medical personnel at SMCI, who also have been named as defendants, filed a motion for summary judgment. Doc. [109]. By order dated May 13, 2019, the Court granted the medical Defendants' motion for summary judgment and dismissed Plaintiff's claims for inadequate medical care and unauthorized medical charges. Doc. [139].

Before the Court is a motion for summary judgment filed by Defendants Jacqueline Banks, Karen Causey, Mark Davis, Roderick Evans, Sheneice Evans, Faytonia Johnson, Joy Ross, Mitcheal Taylor, and Marshall Turner. Doc. [106]. These Defendants are employees of the Mississippi Department of Corrections (MDOC Defendants). In the instant motion, Defendants argue that Plaintiff's claims with respect to conditions of confinement should be dismissed. Because Plaintiff's claims for inadequate medical care and unauthorized medical charges have been dismissed, the Court addresses Plaintiff's only remaining claims: inadequate lighting, unsanitary conditions, accessibility, and inadequate food.

Plaintiff filed a response on July 10, 2019. Doc. [143]. In the first half of his response, he complains primarily about procedural matters, inadequate discovery, and problems with prison mail and the Inmate Legal Assistance Program. Doc. [143] at 1-5. For example, he contends he did not receive his complete medical record. *Id.* at 1. Plaintiff's medical claims have been dismissed pursuant to a separate order; therefore, his complaints regarding medical records are irrelevant for purposes of the MDOC Defendants' motion for summary judgment. Plaintiff also contends he did not receive discovery responses from the MDOC Defendants. At the screening hearing, counsel for the MDOC Defendants provided Plaintiff with 513 pages of documents, which included Plaintiff's institutional record, medical records, and Administrative Remedy Program (ARP) documentation. Doc. [86] at 30. As will be addressed in this order, Plaintiff's discovery requests were untimely. As noted in the Court's order of May 10, 2019, denying Plaintiff's untimely motion to compel discovery, Plaintiff made a general request for discovery and failed "to explain with any degree of specificity how the requested information would be relevant or discoverable or would aid in the prosecution of his case." Doc. [137]. The Court finds no reason to deny summary judgment based on Plaintiff's general, non-specific complaints about inadequate discovery.

## Law and Analysis

### Summary Judgment Standard

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). Where the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, all other contested issues of fact are rendered immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986); *Topalin v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of a material fact and the appropriateness of judgment as a matter of law to prevail on its motion. *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131. "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John v. State of Louisiana*, 757 F.3d 698, 708 (5th Cir. 1985). Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).

**Conditions of Confinement**

Plaintiff alleges unconstitutional conditions of confinement at SMCI. The Constitution does not require that inmates be housed in comfortable prisons; however, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded humane conditions of confinement and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001); *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999); *see also Helling v. McKinney*, 509 U.S. 25, 36 (1993) (holding that the inmate must show that the risk of which he

complains is "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk").

In order to establish an Eighth Amendment violation regarding conditions of confinement, an inmate must establish (1) that the deprivation alleged was sufficiently serious, i.e. an official's act or omission must have resulted in the denial of "the minimal civilized measure of life's necessities"; and (2) that the prison official possessed a sufficiently culpable state of mind. *Herman*, 238 F.3d at 664. The required state of mind is one of deliberate indifference to inmate health or safety. *Id.* Deliberate indifference is established by showing that prison officials (1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn; and (2) that they actually drew an inference that such potential for harm existed. *Id.*

Title 42 U.S.C. § 1997e(e) provides that "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The Fifth Circuit, in interpreting this provision, has held that the phrase "physical injury" in § 1997e(e) means an injury that is more than *de minimis*, but need not be significant. *Alexander v. Tippah County, Miss.*, 351 F.3d 626 (5th Cir. 2003). Plaintiff does not allege any physical injury resulting from the conditions of confinement. Thus, he is limited to declaratory or injunctive relief. *See Harper*, 174 F.3d at 719; *see also Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005).

### **(1) Inadequate Lighting**

Plaintiff argues that there is inadequate lighting in his zone at SMCI. He alleges that the lights are turned on for only 4 or 5 hours a day, if they get turned on at all. On average, he alleges that the main lights are turned on for about 90 minutes per day. He further alleges that

when the main lights are turned on, they do not meet the constitutional requirement of 20 lumens. As a result of inadequate lighting, he alleges he suffers from depression and sleepiness. Plaintiff also has cataracts, which he alleges make it difficult for him to read or complete legal work in the dim lighting.

In his pleadings and at the screening hearing, Plaintiff explained his method for calculating the illumination of the lighting on his zone, as measured in lumens. Doc. [1] at 7; Doc. [86] at 12-13. According to *Webster's Dictionary*, a "lumen" is "a unit of luminous flux equal to the light emitted in a unit solid angle by a uniform point source of one candle intensity." Plaintiff has a bachelor's degree in civil engineering; however, he has not been designated as an expert for purposes of this lawsuit. Doc. [86] at 8. Plaintiff calculated that when the main lights and night lights are both turned on, they provide 17.6 lumens. Doc. [1] at 7; Doc. [86] at 12-13. He cites to *Gates v. Cook*, where the Fifth Circuit indicated that 20 foot-candles is the appropriate level of lighting for prison cells. *See Gates v. Cook*, 376 F.3d 323, 334-35, 341-42 (5th Cir. 2004) (upholding district court's determination that 20 foot-candles was the appropriate level of lighting for cells); *but see Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1088 (7th Cir. 1986)(holding that defendant's expert discredited plaintiffs' contention that less than 20 foot-candles of illumination would be unconstitutional, based in part on readings done in the courtroom revealing 17 foot-candles in the jury box and 18 foot-candles at the judge's bench).

Plaintiff admitted that when the main lighting is turned on, there is "a relatively adequate amount of lighting". Doc. [86] at 13. He further stated that "there are days where there's enough light coming in through the windows that you can see some", but reading is still difficult for him on account of his cataracts. *Id.* Plaintiff explained that he his able to do his legal work by using a "little homemade light", but these homemade lights get confiscated during

5

shakedowns.  *Id.* at 14.  According to Plaintiff, "[t]he biggest effect is that if those [main] lights aren't on and it's dim in there, I stay sleepy all the time".  *Id.*

Plaintiff submitted an ARP grievance on December 15, 2015, complaining that the lights are turned on around 3:00 AM and are turned back off around 7:30 AM and that they are not turned back on unless there is an officer in the zone or for a count.  Doc. [1] at 9.  Plaintiff indicated there are differences of opinion among the inmates as to whether the lights should be on or off.  *Id.*  Sometimes the tower officers will turn the lights back on if requested; other times they will not.  *Id.*  In her first-step response to Plaintiff's ARP, Defendant Faytonia Johnson stated that she placed a maintenance request to have lights replaced on the zone and spoke to the tower officers about ensuring that lights are turned on at scheduled times throughout the day and night.  *Id.* at 10.  In a second-step response, Defendant Jacqueline Banks stated "[t]he lighting units are turned on and off according to established MDOC policy."  *Id.* at 11.

In support of their summary judgment motion, Defendants submitted the declaration of Jacqueline Banks, who served as Superintendent of SMCI from May 2015 to August 2018.  Doc. [106-1].  She states that MDOC's policy is to have zone lights turned on from "wake-up" time to "lights out", which would be from approximately 5:00 AM until approximately midnight.  *Id.*  Occasionally lights would be turned off if they created excessive heat; however, the excessive heat issue was resolved when the lights were replaced with higher efficiency, cooler lights in 2017.  *Id.*  Defendants have not presented any evidence measuring the foot-candles or lumens in Plaintiff's unit.  *Compare White v. Guinn*, No. 2:06-cv-00484-RCJ-GJJ, 2008 WL 763232 (D.Nev. Mar. 19, 2008) (district court rejected inmate's inadequate-lighting claim when prison officials conducted light readings and submitted foot-candle measurements to the court showing them to be in excess of 20 foot-candles).

The Court rejects Plaintiff's claim that there is constitutionally inadequate lighting on the zone when the main lights are turned on. By his own admission, Plaintiff states that there is a "relatively adequate amount of lighting" when the main lights are on. Doc. [86] at 13. As such, Plaintiff fails to allege the denial of "the minimal civilized measure of life's necessities" when the main lights are illuminated. His lay opinion that the combined main lights and night lights provide only 17.6 lumens does not constitute competent summary judgment evidence.

The closer question is whether the duration of illumination is adequate to meet constitutional standards. Defendants present summary judgment evidence that the lights are turned on for approximately 18 to 19 hours a day, pursuant to MDOC policy. However, Plaintiff testified under oath that, in practice, the guards on his zone turn the lights on for no more than 4 or 5 hours per day, with the average being only 90 minutes per day. He alleges that some days the lights are never turned on. In other words, Plaintiff testified that the practice of the tower officers on Plaintiff's zone is different from the policy described by Defendant Banks in her declaration. As Plaintiff testified, how long the lights remain on "highly varies depending on which officer is in the tower." Doc. [86] at 29.

Plaintiff's pleadings and testimony create a factual dispute regarding the length of time that main lights are illuminated on Plaintiff's zone. Taking Plaintiff's testimony as true, the question would be whether 90 minutes of adequate reading light per day comports with constitutional standards. *See Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985)(affirming district court's determination that "lighting was so poor that it was inadequate for reading and caused eyestrain and fatigue); *Benjamin v. Fraser*, 161 F.Supp.2d 151, 181 (S.D.N.Y. 2001) ("subjecting a detainee to unlighted housing for lengthy periods of time may adversely affect the psychological well-being of the detainee."), *aff'd in part vacated in part*, *Benjamin v. Fraser*,

343 F.3d 35 (2d Cir. 2003), *overruled on other grounds*, *Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009); *Dawson v. Kendrick*, 527 F.Supp. 1252, 1288 (S.D.W.Va. 1981); *Cousin v. Delaney*, No. 14-76-JWD-RLB, 2015 WL 589972, at *5 (M.D.La. Feb. 11, 2015). The Court does not reach this question, however, because Plaintiff's allegations suffer from a fatal flaw. He fails to identify a policy attributable to Defendants or personal involvement by the Defendants that caused the constitutional violation.

To successfully bring a case against the Defendants in their official capacities, Plaintiff must show deliberate indifference by establishing that there was "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010). Defendant Banks indicated in her declaration that the MDOC policy is for lights remain on from approximately 5:00 AM until approximately midnight. Doc. [106-1]. Plaintiff also testified that his understanding of MDOC policy was for the lights to remain on from 4:00 AM until 10:30 or 11:30 PM. Doc. [86] at 28-29. Thus, the parties generally agree as to MDOC's lighting policy. The official policy is for the lights to remain on for approximately 16 to 19 hours per day, depending on whose evidence the Court accepts. Either way, the official policy regarding duration of illumination meets constitutional standards.

According to Plaintiff, whether the lights remain on "highly varies" and depends on who is in the guard tower. In his response to summary judgment, Plaintiff argues that Defendants "were named because of their responsibility to ensure the Constitutional operation of the prison." Doc. [143] at 6. He blames these supervisory Defendants for failing "to ensure that practice followed policy". *Id.* at 7. In other words, Plaintiff relies on a theory of supervisory liability.

8

There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir.1987). "[T]o state a cause of action under section 1983, the plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).

Unidentified tower officers, who are not parties to this lawsuit, are committing the alleged unconstitutional practice of inadequate lighting. In his complaint, Plaintiff failed to allege any personal involvement on the part of the named Defendants regarding inadequate lighting. *See* Doc. [1] at 7-8. In fact, at the screening hearing, when asked why he is suing each of the named MDOC Defendants, Plaintiff merely indicated that he sued each of them based on his food-shortage claim and made no connection between the MDOC Defendants and the alleged inadequate lighting. Doc. [86] at 31-32. In a response to Court order filed by Plaintiff on June 23, 2017, he explained that the MDOC Defendants violated his constitutional rights with regard to food service but made no mention of the lighting issue. Doc. [8] at 4-5. As demonstrated by the ARP documentation, prison officials took administrative measures to address Plaintiff's complaints about inadequate lighting. Doc. [1] at 9-11; *see Johnson v. Johnson*, 385 F.3d 503, 526 (5th Cir. 2004) (prison officials' referral of inmate complaint for investigation or taking similar administrative steps "was a reasonable discharge of their duty to protect the inmates in their care."). Specifically, they replaced lights and spoke with tower officers about keeping the lights turned on as scheduled. Other than filing a single ARP grievance, Plaintiff fails to impute any knowledge to the named Defendants regarding inadequate lighting on his zone. Plaintiff has identified a practice of the tower guards that is at odds with the official policy. He does not allege personal involvement on the part of the named defendants nor acts by the named

defendants that are causally connected to the lighting issue. Accordingly, he has failed to state a constitutional claim against any of them for inadequate lighting.

### **(2) Toilets, Sanitation & Accessibility**

In his complaint, Plaintiff alleged that four of the six toilets on his zone were functional. Doc. [1] at 13. Plaintiff also alleged that two of the toilets leaked sewage on a frequent basis, which the inmates mop up as best they can. *Id*. Plaintiff further alleged that inmates are exposed to a sewer smell on the zone. *Id.* In his response to summary judgment, Plaintiff apparently concedes that conditions improved somewhat since the filing of his complaint, because he explained "[h]ow many toilets were functional [at] the time of the *Spears* hearing is immaterial. The damage had already been done in the months before then." *Id*. Doc. [143] at 7. He further argues that "[t]he worst was when we had two toilets out of service because they leaked so badly". *Id*.

There are approximately 100 inmates on Plaintiff's zone and five working toilets. Based on this undisputed fact, Plaintiff is not being deprived of the minimal civilized measures of life's necessities with respect to the number and availability of functioning toilets. At the screening hearing, Plaintiff testified that five of the six toilets on his zone were working and that only one of the toilets still leaked. Doc. [86] at 15. Plaintiff's admission that the zone went from four functioning toilets to five functioning toilets indicates an absence of deliberate indifference to the problem. Likewise, in his complaint, Plaintiff alleged there were two leaking toilets. At the time of the screening hearing, however, he testified that only one toilet was leaking. Contrary to Plaintiff's argument, the number of functioning toilets at the time of the screening hearing is material in that it demonstrates prison officials working to correct the problem rather than showing deliberate indifference.

According to Plaintiff, the sewer smell is related to the leaking toilets. Doc. [1] at 13 ("We are regularly exposed to the sewer gasses as well since the leaks are below the water seal in the toilet."). Plaintiff admits that the matter was turned over to the contract maintenance company (CGL) and that repairs have been attempted, but he alleges the repairs have been unsuccessful. *Id.* at 13-14, 16; *see Kemp v. Hatcher*, 1996 WL 612834, at *3 (E.D.Penna. Oct. 25, 1996) (finding evidence of repairs demonstrated prison officials were not deliberately indifferent). For example, maintenance workers have replaced the wax seals around the toilets. Doc. [1] at 15. Plaintiff also indicated in his complaint that inmates were able to mop up the leaking water. *Id.* at 13. Plaintiff's allegations fail to demonstrate deliberate indifference to the condition. Although he alleges that Defendants' repair efforts have been unsuccessful, such a claim lies in negligence and not deliberate indifference. *See Andrews v. Belt*, 274 Fed. Appx. 359, 360 (5th Cir.2008) ("Andrews's assertion that the defendant may have known about the leaky toilet but failed to repair it at most alleges negligence, which is not actionable under § 1983"); *Hestle v. Bauman*, No. 2:16-cv-196, 2016 WL 5745334, at *3 (W.D.Mich. Oct. 4, 2016). Moreover, Plaintiff admits he is able to use all of the toilets and is not restricted to using only the single handicap accessible toilet (Doc. [86] at 15-16); therefore, he fails to state an accessibility claim.

### (3) Inadequate Food

Plaintiff alleges he has not been receiving "full servings" of all food items on his meal tray. Plaintiff has provided hundreds of entries of daily food logs listing the food items provided and estimating the serving sizes. He alleges that inmate food servers are using the wrong-size ladles for serving food and are "short dipping" food. Plaintiff bases his estimates of portions on his experience as an engineer. He states that he knows how deep each serving should be within

11

each tray compartment in order to constitute a full serving. He also compared the prison food servings to deli meat slices he received at Walmart when he was in the free world. Doc. [86] at 22. Plaintiff alleges that inmates are stealing the food and that Defendants are aware of the situation but have failed to correct it. He also alleges that MDOC officials are deliberately providing small portions of food as punishment for inmates stealing food trays.

Prison officials are required to provide inmates with well-balanced meals, containing sufficient nutritional value to preserve health. *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1997). Plaintiff has presented nothing more than unsubstantiated and conclusory allegations that his meals somehow were constitutionally inadequate. He does not indicate that the meals lack the proper nutritional or caloric value to pass constitutional muster. *See Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998); *Green v. Ferrell*, 801 F.2d,765, 770-71 (5th Cir. 1986). He merely complains that portions should be a little larger than what he has been receiving.

At the time of the screening hearing, Plaintiff had been incarcerated for approximately nine years. Doc. [86] at 23. He testified that he is six-feet, three-inches tall and currently weighs 255 pounds. *Id.* He further indicated that he weighed 305 pounds when initially incarcerated, but he is now between 55 and 60 pounds lighter. At his lowest weight, Plaintiff indicated he got down to 232 pounds. *Id.* According to Plaintiff, he gained some of that weight back because he did not get any exercise and friends at the "chow hall" would bring him extra food. *Id.* at 24.

The Court takes judicial notice that Plaintiff's body mass index (BMI) was 38.1 when he was first incarcerated and that his BMI was down to 31.9 at the time of the screening hearing. In either case, Plaintiff would be considered obese under standards published by the Centers for Disease Control and Prevention. The fact that Plaintiff was overweight when first incarcerated and proceeded to lose 55 to 60 pounds over a nine-year period of incarceration is not evidence of

an unconstitutional deprivation of adequate food and nutrition. Other than some weight loss, Plaintiff does not identify any adverse health conditions resulting from the alleged food shortage. Thus, he has failed to allege a denial of well-balanced meals, containing sufficient nutritional value to preserve health. *See Smith*, 553 F.2d at 380. For a claim such as Plaintiff's to be constitutionally cognizable, the inmate must show that the portion sizes or calories he was served on a daily basis were so inadequate as to deny him the minimal civilized measure of life's necessities. *McClure v. Texas Department of Criminal Justice Corrections Department*, 459 Fed. App'x 348, 351 (5th Cir. 2012). There is no indication that Plaintiff's meals have been deficient to that degree.

**Plaintiff's Miscellaneous Motions**

Plaintiff has filed numerous motions relating to his claims against the MDOC Defendants. He filed a motion to join parties and supplemental motion to join parties. Doc. [102] [104]. In these motions, he seeks to add Roger Davis, supervisor of food services for MDOC, and Warden Andrew Mills. Plaintiff states that he has "encountered additional evidence which I believe will allow me" to prove a case against Davis and Mills. Doc. [102] at 1. In his motion and supplement, Plaintiff fails to identify the additional evidence and fails to explain what cause of action he expects to bring against Davis and Mills based on this additional evidence. Accordingly, Plaintiff's motions to join parties is denied.

Plaintiff also filed motions to dismiss Defendants' motion for summary judgment. Doc. [113] [118]. Plaintiff argues that Defendants' summary judgment motion should be dismissed because he did not receive any discovery responses from the MDOC Defendants. Discovery ended on October 22, 2018. On October 2, 2018 and October 22, 2018, Plaintiff filed notices of service of discovery propounded on the MDOC Defendants. Doc. [97] [98] [105]. Plaintiff

filed a motion to compel on November 28, 2018, based on Defendants' failure to respond to these earlier discovery requests. Doc. [116]. The Court denied Plaintiff's motion to compel as untimely and because he failed "to explain with any degree of specificity how the requested information would be relevant or discoverable or would aid in the prosecution of his case." Doc. [137]. The Court further explained that "Plaintiff's general request for discovery long after the discovery deadline has expired is not an adequate basis for compelling discovery." *Id.* In his motions to dismiss, Plaintiff again fails to specify what discovery he needs or how it would assist him in responding to the summary judgment motion. He simply declares, in conclusory fashion, that he should be provided responses to his discovery requests. Therefore, the Court finds his motions to dismiss Defendants' motion for summary judgment should be denied.

Plaintiff filed on February 5, 2019; March 11, 2019; and May 6, 2019; motions for reconsideration of the Court's order of April 26, 2018, denying Plaintiff's nine separate motions for injunctions and temporary restraining orders. Doc. [126] [132] [136]. Plaintiff's motions for reconsideration are untimely. He waited almost nine months to seek reconsideration of the Court's order. Moreover, most of Plaintiff's arguments relate to allegations of damaged and unclean meal trays. In his complaint, Plaintiff did not mention damaged and unclean meal trays or unsanitary kitchen conditions as part of his cause of action. *See* Doc. [1] at 117-21. Likewise, at the screening hearing, Plaintiff did not offer any testimony relating to unsanitary food conditions or damaged and unclean trays. His complaint and testimony were limited to complaints about food portion sizes. Accordingly, Plaintiff's motion for reconsideration should be denied because the relief requested is outside the scope of his complaint.

14

IT IS THEREFORE ORDERED AND ADJUDGED that Defendants' [106] Motion for Summary Judgment is GRANTED and that Plaintiff's 42 U.S.C. § 1983 civil rights complaint is dismissed with prejudice as to all claims and all defendants.

IT IS FURTHER ORDERED that Plaintiff's [102] [104] [113] [118] [126] [132] [136] Motions are DENIED.

SO ORDERED AND ADJUDGED, this the 18th day of September 2019.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE